IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CR282 |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH B. STEWART, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on August 5, 2011.

**I.   FACTS**

The defendant was charged in a superseding indictment with possession with intent to distribute 28 grams or more of a mixture or substance containing a detectable amount of cocaine base (i.e., cocaine base) in violation of 21 U.S.C. § 841(a)(1) &b (b)(1). Filing No. 63. The government filed a notice of information of prior conviction on March 7, 2011, alleging that the defendant had a prior felony drug possession conviction that would subject him to enhanced punishment. Filing No. 69. Pursuant to a plea agreement, the defendant entered a plea of guilty to the superseding indictment. Filing No. 79, Plea Agreement; Filing No. 76, text minute entry. In the plea agreement, the parties stipulated that Stewart should be held responsible for at least 28 grams of crack cocaine. Filing No. 79, Plea Agreement at 3. The government also stipulated that the defendant was entitled to a three-level reduction for acceptance of responsibility and had truthfully disclosed information so as to be eligible for a two-level reduction under the safety valve. *Id.* The court accepted the defendant's plea but withheld approval of the plea agreement pending

the preparation of a Presentence Investigation Report ("PSR") by the United States Office of Probation ("Probation").  Filing No. 76, text minute entry.

In the PSR, the Probation Office reported that Stewart was arrested after he was found sitting in his parked vehicle in a residential neighborhood.  Filing No. 85, PSR (sealed) at 5.  Approximately 86 grams of crack, a scale, and other drug paraphernalia were found in the center console of the car.  *Id.*  A total of $7,035 in U.S. currency was also recovered from the vehicle.  *Id.*  The Probation Office determined that the currency would convert to a crack cocaine equivalent of 70.35 grams of cocaine base.  *Id.* at 6.  The defendant was later arrested by the Omaha Police and found in possession of an additional 1.3 grams of cocaine base.  *Id.*  Accordingly, the Probation Office found the total quantity of cocaine base attributable to the defendant was 157.9 grams.  Under U.S.S.G. § 2D1.1, the base offense level of distribution of between 112 and 196 grams of cocaine is 28.  The Probation Office determined that the defendant was entitled to a 2-level reduction under the Guidelines "safety valve" provision because he met the criteria under U.S.S.G. § 5C1.2(a)(1) - (5).  *Id.* at 6.  After a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) & (b), the Probation Office determined that the defendant's total offense level was 23.  At offense level 23 and criminal history category I, the defendant's sentencing range under the Guidelines would be 46 to 57 months.

The defendant is 44 years old.  *Id.* at 10.  He has a high school diploma and completed a program to obtain his commercial driver's license.  *Id.* at 13.  He has served in the military.  *Id.* at 14.  He is married and has four children.  *Id.* at 11-12.  He has legal guardianship over and provides primary care and support for his elderly father.  *Id.* at 11.

He is presently employed as a "Shag Driver" and a mobile equipment operator, earning $11.22 per hour. *Id.* at 14. His employer reports above-average performance at work. *Id.*

Mr. Stewart reported that he first used alcohol at age 17 years old and crack cocaine at 18. *Id.* at 13. He abstained from drug use from 1999 to 2007, after completion of an inpatient drug rehabilitation program, but reported that he relapsed after the death of his mother. *Id.* at 13. After losing his job as a result of drug use, he resorted to selling crack cocaine to earn money and to support his drug habit. *Id.* He entered treatment at Williams Prepared Place in October of 2009 and he graduated from the treatment program in January 2011. *Id.* He is actively involved in a structured relapse-prevention program, attends AA meetings and has a sponsor. *Id.*

The government adopted the findings in the PSR. Filing No. 82. The defendant objected to the PSR, arguing that he should be assigned a base offense level of 26 rather than 28 and his Guidelines range should accordingly be 37 to 46 months. Filing No. 80. He also moved for a variance from the sentencing Guidelines based upon his post-offense rehabilitation and caretaker role for his elderly father.

Numerous letters of support for the defendant were received into evidence at the hearing. See Exs. 101-110. Those letters confirm that the defendant is drug and alcohol free and attest to his character. *See id*.

**II. LAW**

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007). Under § 3553(a), the district

court must consider the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant.  *Gall*, 552 U.S. at 41, 49-50 & n.6.  That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter.  *Nelson v. United States,* 555 U.S. 350, —, 129 S. Ct. 890, 891-92 (2009) (per curiam).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at 101 (quoting *Booker*, 543 U.S. at 245-246); *Pepper v. United States,* — U.S. —, —,131 S. Ct. 1229, 1241 (March 22, 2011).  When Guidelines were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court can afford less deference than it would to empirically-grounded Guidelines.  *See Kimbrough*, 552 U.S. at 101 (noting that drug-offense Guidelines were promulgated pursuant to Congressional directive).

Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order to warrant a departure on that basis.  *See United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005).  However, factors that were discouraged or prohibited as departure factors under

the mandatory Guidelines may be considered in connection with the § 3553(a) analysis. *United States v. Lazenby,* 439 F.3d 928, 933 (8th Cir. 2006). "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006). The sentencing framework that applies at a defendant's initial sentencing provides the district court may consider evidence of rehabilitation to support a downward variance from the Guidelines. *Pepper,* 131 S. Ct. at 1241 (noting that the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law); *see United States v. Shy,* 538 F.3d 933, 938 (8th Cir. 2008) (affirming a variance to probation for extraordinary post-arrest rehabilitation, noting that rehabilitation was genuine and the defendant was a positive contributor to society); *United States v. McFarlin,* 535 F.3d 808, 811 (8th Cir. 2008) (affirming variance to probation based on health and extraordinary post-arrest rehabilitation).

### III. DISCUSSION

#### A. Initial Guidelines Calculation

The court generally accepts the facts set forth in the PSR and finds the defendant's total offense level is 23 and his criminal history category is I. The defendant's objection to a base offense level of 28 is overruled. Accordingly, the court finds that the defendants' sentencing range under the Guidelines is 46 to 57 months.

B.  Departure

For the reasons discussed below in connection with a variance from the Guidelines, the court finds that the defendant's motion for a downward departure should be granted. The court finds the defendant's rehabilitation is exceptional enough to be atypical.

C.  Section 3553 factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of time served is appropriate in this case.  The Probation Office recommended a sentence below the Guidelines range, noting the defendant's success at maintaining sobriety and the need for the defendant to care for his elderly father.  The defendant has made substantial progress while on pretrial supervision during the lengthy period that the government's interlocutory appeal of this court's order granting his motion to suppress was on appeal.  The defendant has completed a rigorous fifteen-month residential substance abuse program and has maintained sobriety and stayed active in AA since graduating from the program.  The court finds a sentence of time served is sufficient, but not greater than necessary to accomplish the goals of sentencing.  The court will accordingly grant the defendant's motion for a deviation or variance from the Guidelines.

With respect to the nature of the offense, the court notes that drug distribution is undoubtedly a serious crime.  However, the court notes that no violence or weapons were involved in this offense.  Also, the quantity of crack cocaine for the Guidelines-recommended sentence was based in part on an extrapolation from seized currency. Under the Guidelines market-based approach, an important consideration is where the defendant falls within the hierarchy of a drug distributing or manufacturing conspiracy. There is no evidence that Stewart was more than a small player in the criminal enterprise.

In view of the defendant's attenuated role, the quantity determination does not serve as a reliable proxy for culpability.

The defendant's history and characteristics are an important part of the court's analysis. The defendant is nearly forty-five years of age and has lived substantial periods of his adult life as a steadily-employed and law-abiding citizen. His criminal acts were connected to addiction, and his record is clear of crimes not connected to substance abuse.

The evidence establishes that the defendant's rehabilitation has been extraordinary. The court is sadly aware that not all defendants who undergo chemical dependency treatment take advantage of the opportunity to the extent that Stewart has. The court appreciates the difficulty of a defendant's overcoming an addiction, especially to crack cocaine. At present, the defendant is employed, supporting his family, caring for his elderly father and otherwise functioning as a productive member of society. The court finds further incarceration of the defendant would serve no purpose. Stewart's efforts at recovery and rehabilitation are atypical and exceptional and should be rewarded.

In formulating this sentence, the court has considered the sentencing range established by the Guidelines and used it as a starting point. However, because the drug offenses not empirically-based, the court affords the Guidelines less deference. The Guidelines calculation is also driven by drug quantity which can be one measure of the seriousness of a drug offense, but is not always a trustworthy measure of the culpability of an individual defendant.

A sentence of time-served also satisfies the purposes of sentencing. A sentence that includes some period of incarceration is generally necessary in a drug-trafficking case

to achieve the goals of sentencing and to establish some level of proportionality. The defendant was in custody for some period of time and has completed a fifteen-month period of inpatient chemical dependency treatment. The residential treatment program imposed similar restraints on the defendant's freedom. Under the circumstances, a sentence of time served reflects the seriousness of the offense, promotes respect for the law and provides just punishment. The need to protect society from further crimes of the defendant is accounted for in the court's imposition of a five-year period of supervised release with stringent conditions.

A Judgment and Commitment and a Statement of Reasons in conformity with this Sentencing Memorandum will issue this date.

DATED this 11th day of August, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.